IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re BRETT CHRISTOPHER HOOPER AND WENDY SUE HOOPER, Debtor. | Chapter 7<br>Case No. 09-bk-26224-SSC<br>MEMORANDUM DECISION RE: TRUSTEE'S MOTION TO COMPEL TURNOVER OF ESTATE PROPERTY |
|---|---|

I. PRELIMINARY STATEMENT

Brett and Wendy Hooper ("Debtors") filed a voluntary Chapter 7 bankruptcy petition on October 16, 2009. On October 22, 2009, Brian J. Mullen ("Trustee") was appointed the Chapter 7 Trustee of the bankruptcy estate. At the time of the commencement of the case, the bankruptcy estate was mostly comprised of the Debtors' tax refunds for taxable years 2008 and 2009 in the amount of roughly $2,000.

On November 6, 2009, however, Congress passed the Worker, Homeownership and Business Assistance Act ("WHBAA"), which allows taxpayers to apply 2008 and 2009 net operating losses ("NOLs") to the previous three, four, or five taxable years to reduce the tax liability that may be due and owing by a taxpayer. 26 U.S.C. § 172 (West 2010). Depending on the amount of the NOLs, the taxpayer may be able to reduce the tax liability in a subject year to zero, producing a refund. See id. Prior to the passage of WHBAA, the standard carryback period for any NOL was only two years. Id. As a result of the passage of WHBAA, the Trustee

analyzed the Debtors' NOLs in 2008 and 2009 from the operation of their various business entities.[1] Believing that these NOLs could be used to generate additional refunds for the bankruptcy estate, the Trustee retained Semple, Marchal & Cooper, LLP, tax professionals, to amend the Debtors' tax returns.

On June 30, 2010, the Trustee filed a motion to compel, demanding that under 11 U.S.C. § 542, the Debtors turn over any tax refunds generated as a result of the passage of WHBAA. The Debtors opposed such relief, stating that any tax refunds they might receive constituted postpetition, forward-looking stimulus payments that were not property of the bankruptcy estate. The matter was set for an expedited hearing on September 7, 2010.[2] At the time of the hearing, however, the Court had not yet received the Debtors' response, which contained additional legal authority in support of their position. The Court allowed the parties to submit supplementary memoranda of law in support of their respective positions.

Both parties have fully briefed the turnover issue, and it is now under advisement. In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2010).

## II. ISSUE PRESENTED

WHETHER THE NET OPERATING LOSS REFUND CLAIM GENERATED AS A RESULT OF POST-PETITION LEGISLATION IS PROPERTY OF THE BANKRUPTCY ESTATE UNDER 11 U.S.C. §541

---

**1.** For purposes of this decision, the parties apparently do not dispute that the NOLs of Debtors' entities may be up-streamed to the Debtors for tax purposes and applied to the individual Debtors' tax returns.

**2.** The appearances at the hearing are as noted on the record.

## III. DISCUSSION

As previously noted, the Trustee retained an accounting firm to determine whether the Debtors' tax returns should be amended, in light of WHBAA, to generate tax refunds as property of the bankruptcy estate. It appears that the Debtors independently retained their own certified public accountant to assist them, and that their accountant may already have amended their returns and filed them with the Internal Revenue Service ("IRS").[3] Although the Court has not received a copy of these amended returns, the Debtors have apparently relied on WHBAA and have applied the substantial NOLs incurred from the operation of their various business entities during the 2008 and 2009 taxable years to offset portions of their 2004 and 2005 taxable income, producing *additional* refunds beyond what they disclosed upon filing their bankruptcy petition.

The Trustee contends that the NOLs and any refunds they may generate are property of the bankruptcy estate under 11 U.S.C. § 541, and are subject to the Trustee's powers of turnover under 11 U.S.C. § 542. The Debtors argue that the money generated through application of WHBAA is not bankruptcy estate property at all, but is rather a forward-looking stimulus payment based upon a postpetition change in the law.

Under § 541(a), the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." The term "property" as used in § 541 should be construed broadly. In re Feiler, 218 F.3d 948, 955 (9th Cir. 2000). An interest should not be disqualified as property simply because it is "novel or contingent" or

---

**3.** There has been an ongoing dispute between the Trustee and the Debtors as to whether the Debtors alerted the Trustee as to what they intended to do, whether the Debtors provided all of the tax information necessary for the Trustee's accountant to make an informed decision as to how to amend any of the Debtors' returns, and whether the Debtors willfully violated the automatic stay by amending their returns. The Debtors counter that the Trustee received all of the necessary information, including the amended returns, that no information was withheld, and that since the refunds were not property of the estate, the Debtors never willfully violated the stay. The facts underlying these disputes, including the Debtors' willful violation of the stay, have not been fully developed. Therefore, the Court will set these matters for further hearing.

subject to postponed enjoyment. Id. (quoting Segal v. Rochelle, 382 U.S. 375, 379 (1966)).

Although the current facts are somewhat unique, the federal courts have addressed similar issues over the years. In Segal v. Rochelle, 382 U.S. 375, 379, 86 S. Ct. 511, 515 (1966), the United States Supreme Court considered to what extent a refund received postpetition by bankrupts, but generated by the application of a net operating loss carry-back to prepetition taxes paid by the bankrupts, was property of the bankruptcy estate. The bankrupts had generated "loss-carryback tax refunds" during 1961, prior to filing their bankruptcy petition on September 27, 1961.[4] Id. at 376. They elected postpetition to carry back their losses to offset their net income from 1959 and 1960, which generated a postpetition refund. The bankrupts argued the refund should not be property vested in their bankruptcy trustee, since it had not been acquired by the petition date. Id. at 377.

The Supreme Court disagreed. It found that the refund was vested in the bankruptcy trustee for distribution to creditors, and noted that "postponed enjoyment [did] not disqualify an interest as 'property.'" Id. at 379-80. The Supreme Court stated that after-acquired property would be considered property vested in the bankruptcy trustee, if it were "sufficiently rooted in the prebankruptcy past and so little entangled in the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' [of the bankruptcy estate]."[5]

---

**4.** The loss-carryback tax refunds, described in the Segal decision, are the equivalent of the net operating loss tax refunds that are now being considered.

**5.** In determining what property was vested in the trustee for distribution to creditors, the Supreme Court analyzed Bankruptcy Act § 70(a)(5), the precursor to § 541. The statute provided, in pertinent part,

> (a) The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as its is to property which is held to be exempt, to all of the following kinds of property wherever located . . .
> (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . .

Id. at 380. The Supreme Court relied on two key elements in concluding that the refund temporally existed at the time the bankruptcy petition was filed. First, the bankrupts had already paid taxes on the net income generated within the past three years. Id. Second, at the time of filing of the petition, it appeared that the bankrupts would have a net operating loss for the year. Id. Although the refund claim was contingent insofar as it might increase or decrease based on earnings received after the filing of the petition and before the end of the tax year, the contingent nature of the claim did not change the fact that the refund was property of the bankruptcy estate at the time the bankrupts filed their petition.[6] Id.

---

Bankruptcy Act § 70(a)(5), 30 Stat. 565 (1964) (repealed 1978).

The First and Third Circuits had previously determined that prior to the end of the tax year, any attempt to classify a loss-carryback refund claim as property of a bankruptcy estate was "too tenuous." They also reasoned that the refund claims were "inchoate" because of the federal anti-assignment statute, 31 U.S.C. § 203 (1964) (repealed 1982), which precluded the property from being transferred as required under Bankruptcy Act Section 70(a)(5). The relevant portion of the federal anti-assignment statute provided, at the time, that

> [a]ll transfers and assignments made of any claim upon the United States, or any part or share thereof, or interest therein, whether absolute or conditional and whatever may be the consideration therefor. . . . shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.

The Fifth Circuit had created a circuit split by concluding that the refund claims were both "property" and "transferable" at the time of the filing of the bankruptcy petition, and therefore passed to the trustee. Segal, 382 U.S. at 377-78.

**6.** The bankrupts argued that such a ruling would apply to "loss carryovers"—that is, to the application of pre-bankruptcy losses to earnings in future years—which would force the trustee to leave the estate open for five, seven, or even ten years in an attempt to recover further assets, and would be an "inconvenience" or "hindrance" to the bankrupts. While the Supreme Court did not rule on the matter, it noted that the bankrupts had net income and a net loss when they filed their petitions and "would have deserved an immediate refund had their tax year terminated on that date," while the "supposed loss-carryover would still need to be matched in some future year by earnings, earnings that might never eventuate at all." Segal, 382 U.S. at 381.

A second issue addressed by the Supreme Court, concerning whether the bankrupt had an interest in property which could be transferred prior to the filing of the petition, is no longer relevant. Compare Bankruptcy Act § 70(a)(5), with Bankruptcy 11 U.S.C. § 541, and S. Rep. No. 95-989, at 82 (1978).

As in Segal, the Debtors in this case seek to offset prepetition NOLs against prepetition income upon which they have already paid taxes. The fact that they will *receive* the refund postpetition does not change the essential character of the asset. Specifically, the Debtors will be applying NOLs from 2008 and 2009 to offset 2004 and 2005 income upon which they have paid taxes. By carrying back the NOLs, the Debtors in this case essentially hope to generate an overpayment of 2004 and 2005 taxes that will lead to an additional tax refund now. As was true in Segal, the refund, although it will be received postpetition, is "rooted in the prebankruptcy past" and is, therefore, property of the estate.[7] Id.

The Debtors claim that their case is distinguishable because a postpetition change in the law has given them an interest in property that did not exist at the time of petition,[8] and the NOLs had no value at the time of the filing of their petition because of that change.[9] See In re Lambert, 273 B.R. 887 (Bankr. D. Or. 2001) (finding that a postpetition change in tax law could potentially disqualify a tax refund as estate property if further factual inquiry in that case showed the refund was forward-looking).

---

**7.** The Trustee has met the two critical elements set forth in the Segal decision to support a turnover of the refund to be generated postpetition: to wit, the Debtors have already paid taxes on the net income that will generate the refund, and as of the time of the filing of their bankruptcy petition, the Debtors have generated a loss from their business operations for the 2009 tax year.

**8.** The Debtors seek to characterize the refund as a "stimulus relief payment" that is "2010 income." However, the Court finds no evidence of any such label in the WHBAA other than a reference to a refund that is based on the extended application of prior years' NOLs to prior years' taxable income. Even with such a label, the Court concludes that the refund to be paid is rooted in the past and, hence, unrelated to earnings that are actually generated by the Debtors *postpetition*.

**9.** The Debtors argue that this Court should adopt the Third Circuit's reasoning in In re Sussman, 289 F.2d 76 (3d Cir. 1961). In Sussman, the court held that a refund was not property of the bankruptcy estate because the bankrupts had no vested right to the refund when they filed their bankruptcy petition. The Supreme Court, however, has essentially overturned Sussman on that point. See Segal, 382 U.S. at 375. The Court specifically disapproved of the Sussman holding and followed another Circuit's rationale in determining that an interest in property still existed even if it vested postpetition. Segal, 382 U.S. at 378-79.

The Debtors assert that <u>Segal</u> is not relevant to the issue at hand, and that <u>In re Lambert</u>, 273 B.R. 887 (Bankr. D. Or. 2001), somehow creates a bright-line rule that legislation which becomes effective after a debtor files a bankruptcy petition creates a new legal or equitable interest of the debtor in any property generated after the commencement of the case. Since the legal or equitable interest is created after the commencement of the case, the Debtors argue that it cannot be property of the estate under § 541(a)(1). The Debtors have misconstrued the reasoning and conclusion of <u>Lambert</u>.

First, the <u>Lambert</u> court specifically acknowledged that <u>Segal</u> was still binding precedent. <u>See</u> <u>Lambert</u>, 273 B.R. at 890. Further, the <u>Lambert</u> court stated that the key to determining whether a refund was property of the bankruptcy estate was not whether the tax attribute relied on prepetition conduct, but whether the application of the attribute would result in a return of moneys placed in the hands of the IRS prior to the filing of the petition. <u>Id.</u> at 891 (citing <u>In re Christie</u>, 233 B.R. 110 (B.A.P. 10th Cir. 1999)). Finally, the <u>Lambert</u> court differentiated between its facts and those in which benefits created postpetition might relate to prepetition conduct, but were nevertheless *new* funds. <u>Id.</u> (citing <u>In re Schmitz</u>, 270 F.3d 1254 (9th Cir. 2001) (postpetition commercial fishing rights); <u>In re Vote</u>, 261 B.R. 439 (8th Cir. 2001) (postpetition crop disaster assistance programs)). The court stated that such new benefits were not tied to funds previously paid by the debtor and could not be considered property of the estate. <u>Id.</u>

Ultimately, however, the <u>Lambert</u> court concluded that it had insufficient facts to rule on the matter, because the debtors had not yet filed their returns for 2001, the year that they filed their bankruptcy petition, when the court heard the matter. <u>Id.</u> at 892. The court did state that if the postpetition check received by the debtors was equal to or less than the their total tax liability, then the check was a refund, with the portion attributable to the period from January 1,

2001 to February 22, 2001—a total of $84—being property of the bankruptcy estate.[10] Id. The balance of the refund would belong solely to the debtors. Id. The court also concluded that if the postpetition check was greater than their tax liability, the debtors could retain the excess, which would constitute a newly created benefit not included in the bankruptcy estate. Id. Thus, Lambert created no bright-line rule. Rather, the court was willing to apportion the refund as appropriate. The fact that the legislation took effect after the debtors filed their bankruptcy petition was not determinative.

Although the WHBAA took effect postpetition, it has given the Debtors the ability to apply a tax attribute, the NOL, for an extended period of time; that is, to reach further back in time to determine if a refund is appropriate. The effect is that the Debtors are reaching back to the 2004 and 2005 tax years to utilize NOL's to not only reduce the taxes previously paid by them to the IRS to zero, but also to determine whether the NOL's may generate a refund for them to claim. Given the reasoning in Segal and Lambert, the Debtors are receiving an asset which is property of the bankruptcy estate. Any refund is solidly rooted in the prebankruptcy past.

Although not material to this decision, the only potential carve-out of an asset for the Debtors that this Court may envision is a proration of the refund to the extent that the losses incurred by the Debtors' business entities after the filing of the Debtor's petition, but before the end of the 2009 tax year, concomitantly increased the amount of any refund to be received. See Segal, 382 U.S. at 212 n.5. There is no evidence in the record, however, to indicate that any type of proration may apply to these Debtors.

The Debtors also assert that certain legislative statements under § 541 show that if an interest in property is limited in the hands of the debtor, it is equally limited in the hands of

---

**10.** The debtors filed their bankruptcy petition on February 22, 2001. Thus, the court proposed to prorate any refund, with the period from January 1, 2001, until February 22, 2001, to be designated the prepetition portion of the refund and, hence, property of the bankruptcy estate.

the estate (except with certain personal defenses against the debtor to which the estate is not subject). From this legislative intent, the Debtors have derived a non sequitur: since the Debtors could not apply for the refund at the commencement of the case, the bankruptcy estate should not have a right to the refund now. This reasoning creates an ethereal refund belonging to no one. Returning to the nature of the refund, not its timing, WHBAA relates to prepetition taxes paid by the Debtors to the IRS. At least on this record, any return of those funds—even if generated and received postpetition—has roots in the prebankruptcy past. Except to the extent of a possible proration, the refund is property of the bankruptcy estate.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the postpetition refund generated by the enactment of postpetition legislation is property of the bankruptcy estate to the extent that the refund is predicated on prepetition taxes having been previously paid by the Debtors to the Internal Revenue Service. The nature, not the timing, of the refund determines whether the refund is property of the bankruptcy estate. The Debtors' 2008 and 2009 NOL's and the refund in question generated by those NOL's are property of the estate subject to the Trustee's turnover power under 11 U.S.C. § 542. The Trustee's motion to compel turnover is hereby granted, in part, and the Debtors are hereby ordered to turn over to the Trustee any refunds they have received, or will receive, under the WHBAA from the application of the 2008 and 2009 NOL's.

The Court has insufficient information to determine if any of the losses for the limited period of time between the filing of the Debtors' bankruptcy petition in October 2009 and the end of the 2009 tax year generated any net operating losses that may lead to some type of proration of the refund to permit any payment to the Debtors. The Court is also unable to resolve the Trustee's additional claims concerning a violation of the automatic stay or a lack of cooperation by the Debtors with the Trustee at this time. The Court will set a status hearing on

the remaining issues through a separate notice of the Court. The Trustee shall lodge an order, on notice to the Debtors, that is consistent with this Memorandum Decision.

DATED this 14th day of December, 2010.

Honorable Sarah Sharer Curley
United States Bankruptcy Judge